Green, J.
delivered the opinion of the court.
The part of the charge complained of, assumes, that a corporation cannot apply the public property of a towa to any new use, other than that for which it was designated when the town was originally laid off. In this we are of opinion that the court erred. The public property belongs to the corporators, and may be appropriated by them to any use they may think proper: The mayor and aldermen are the representatives of these corporators, and have vested in them all the right to dispose of, or *500 apply to any use they may think proper, the public promenade, public squares, &c. which existed in the original proprietors. If this were not so, a thriving town would be exceedingly crippled in the exercise of its corporate rights. Few persons would have sufficient foresight ire laying off a town, to anticipate and provide every thing, that was calculated to promote its prosperity aiffi good government. It must therefore be among the powers of a corporate town, having by its charter a right “to do .all things necessary to be done by corporations,” to lay off new streets, squares, lanes, and alleys, and to construct wharves and other conveniences for the trade and comfort of the citizens, and by ordinances to regulate the manner in which they shall be used. These powers are “necessary to be done” that the prosperity of the town may be promoted, and that its peace and order may be preserved.
In argument another point has been insisted on, which is this: Because the Mississippi river is a public highway, to the navigation of which all have a right, together with the privilege of using the banks on which to land, that therefore the corporation of Memphis has no right to appropriate any portion of the banks for an exclusive purpose.
It is a well settled principle, that the State in which resides the eminent domain to the whole territory, has the right to appropriate even the property of a private citizen to public use; compensating the citizen therefor. Upon this principle is land condemned for mills, roads, and ferries. The right of each navigator of the river to the use of the bank, cannot be of a higher nature than the right of a citizen to the land which the State has granted to him. As therefore the latter can be deprived of his land for public use, so may the former be deprived of the use of particular portions of the bank, if the public good demand it. Hence ferries are established on the Mississippi river, pnd portions of the banks are designated *501 as the landing places. It will not be contended that a set of boatmen would have a right to crowd their flatboats at the ferry landing so as to exclude the ferry boat. And why? Because the establishment of the ferry has appropriated to this exclusive use the banks at the places of landing.
By the act of incorporation, all the power to condemn for a particular public use, any portion of the bank of the Mississippi included in the corporation, which existed in the legislature of the State, is transferred to the corporation of Memphis, for the latter clause of the second section of the charter of incorporation says, it shall have power “to do all things necessary to be done by corporations.” For the encouragement of trade, the construction of convenient plaees of landing was “necessary to he done,” and for the preservation of peace and good order, the designation of particular landings for different kinds of water craft was “necessary.” But this designation would have been useless had it not been enforced by a penalty; therefore, the corporation had authority to enact- the ordinance in question.
The judgment must be reversed, and the cause be remanded to the circuit court of Shelby for another trial.
Judgment reversed.